KERRY MURRAY
Plaintiff, pro se
881 Franklin Cir
Palm Harbor, FL 34683
T: 651-235-0482
ksmurray@live.com

JUL 31 2026 PM2:05
FILED - USDC - FLMD - TPA

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KERRY MURRAY,

    Plaintiff,

v.

NEWREZ LLC d/b/a SHELLPOINT
MORTGAGE SERVICING, MCCALLA
RAYMER LEIBERT PIERCE LLC,
ALDRIDGE PITE, LLP

    Defendants.

Case No.: 8:26-cv-2214-MSS-LSG

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Kerry S. Murray, pro se, ("Plaintiff"), sues Defendants, NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), McCalla Raymer Leibert Pierce LLC ("Foreclosure Counsel"), and Aldridge Pite, LLP ("Possession Counsel"), (collectively, "Defendants") and alleges as follows:

### INTRODUCTION

1. At all times relevant to this action, Plaintiff Kerry Murray was the owner and occupant of the subject property and was actively defending a pending judicial foreclosure action in the Circuit Court for Pinellas County, Florida. On January 21, 2026, Plaintiff appeared at a hearing on motions seeking inspection of the original promissory note, payment tracing, and a stay of the scheduled foreclosure sale. Later that same day, Plaintiff's father passed away. Despite these extraordinary

1



circumstances and with the foreclosure sale scheduled for the following morning, Plaintiff promptly contacted Foreclosure Counsel to request a brief postponement of the sale but received no response.

2. On the morning of January 22, 2026, Plaintiff contacted Shellpoint to discuss available options to retain her home. During that conversation, a Shellpoint representative advised Plaintiff that the foreclosure proceedings had been placed on hold because her loan was under active loss mitigation review. The representative further instructed Plaintiff to make a payment of $2,613.50 and advised that the matter would be immediately escalated to Foreclosure Counsel to stop the scheduled foreclosure sale.

3. Plaintiff relied on those representations and promptly remitted the requested payment. Despite those representations, the foreclosure sale proceeded later that morning, and the property was ultimately acquired by Shellpoint.

4. Plaintiff is not challenging the validity of the state court's foreclosure judgment. This lawsuit seeks damages for misconduct that occurred during the servicing of Plaintiff's mortgage loan, including false representations that induced Plaintiff's $2,613.50 payment, failure to respond to Notices of Error as required by federal law, deceptive marketing of Plaintiff's property before title issued, and improper pursuit of possession proceedings while servicing disputes remained unresolved. These claims are independent of the state court judgment and do not seek its reversal.

### I. JURISDICTION AND VENUE

5. This is an action arising under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. Section 2605, and its implementing regulation, Regulation X, 12 C.F.R. Part 1024. Plaintiff seeks all damages and other relief authorized by law, including actual damages, statutory damages where permitted, attorney's fees, costs, and appropriate equitable or declaratory relief.

2

6. This Court has federal jurisdiction pursuant to 28 U.S.C. Section 1331. Plaintiff also brings supplemental state law claims pursuant to 28 U.S.C. Section 1367.

7. Venue is proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. Section 1391 because the property that is the subject of this action is located in Pinellas County, Florida and a substantial part of the events and omissions giving rise to this action occurred in this District.

## II. PARTIES

8. Plaintiff, Kerry Murray, is a natural person residing in Pinellas County, Florida.

9. Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing is a mortgage loan servicer doing business in Florida.

10. Defendant McCalla Raymer Leibert Pierce LLC is a law firm that represented the foreclosing party in the foreclosure proceedings. Upon information and belief, McCalla Raymer Leibert Pierce LLC was aware of Shellpoint's representations to Plaintiff regarding the foreclosure hold and Plaintiff's request for postponement, yet continued to prosecute the sale.

11. Defendant Aldridge Pite, LLP is a law firm that represented the foreclosing party in post-foreclosure possession proceedings. Upon information and belief, Aldridge Pite, LLP was aware that Plaintiff had unresolved servicing disputes, pending investor-level review, and had filed a CFPB complaint, yet nevertheless pursued eviction proceedings without responding to Plaintiff's good-faith communications.

## III. FACTUAL ALLEGATIONS

### A. Pre-Foreclosure Servicing Disputes

12. On December 8, 2025, Plaintiff submitted a Qualified Written Request ("QWR") and Request for Information pursuant to RESPA, 12 U.S.C. Section 2605(e), and Regulation X, 12 C.F.R. Section 1024.36. Through the QWR, Plaintiff sought information concerning the servicing of the loan and requested documents and information necessary to better understand the ownership, servicing history, transfer

history, and enforcement of the mortgage loan. A true and correct copy of the QWR is attached hereto as Exhibit A.

13. Among other things, Plaintiff requested information concerning the loan's servicing history, prior transfers, assignments, endorsements, and the location and custody of the original promissory note after identifying apparent discrepancies that Plaintiff believed warranted clarification. Plaintiff does not ask this Court to adjudicate ownership of the note or the validity of the underlying foreclosure judgment. Rather, those apparent discrepancies provide factual context for Plaintiff's servicing inquiries and Shellpoint's subsequent responses.

14. On December 18, 2025, Shellpoint responded to Plaintiff's QWR. In its response, Shellpoint stated, among other things, that it was not required to produce the original wet-ink promissory note or identify the name and location of the document custodian. Shellpoint further stated that no foreclosure sale had been scheduled as of the date of its response. A true and correct copy of Shellpoint's response is attached hereto as Exhibit B.

15. Plaintiff notes that, before Shellpoint issued its December 18, 2025 response, the plaintiff in the state foreclosure action had already filed a Motion to Reschedule Foreclosure Sale on December 12, 2025 after a previously scheduled sale did not occur because of an administrative error. Plaintiff includes this chronology solely as factual background concerning Shellpoint's servicing communications and knowledge of the pending foreclosure proceedings.

16. Shellpoint also produced a copy of the promissory note that Plaintiff alleges differed from the version of the note filed in the pending state foreclosure action. Plaintiff includes this allegation solely as part of the factual chronology that led to the subsequent communications and disputes regarding the servicing of the loan.

B. **The January 2026 Foreclosure Sale**

17. On January 21, 2026, a hearing was held on Plaintiff's pending motions to compel inspection of the note, stay the sale, and compel payment tracing. Plaintiff's motions were denied.

4

**18.** The foreclosure sale was scheduled for the following morning, January 22, 2026, at 10:00 a.m.

**19.** Plaintiff states under oath in her affidavit that after the January 21, 2026 hearing, she informed Foreclosure Counsel of her father's passing and requested a brief delay of the sale. *See* Affidavit of Kerry Murray Regarding Loss Mitigation and Foreclosure Sale Activity Exhibit C.

**20.** Plaintiff contacted Freddie Mac concerning the servicing of the loan and was assigned Case No. 04330776. *Id.*

**21.** On the morning of January 22, 2026, at approximately 8:18 a.m. EST, Plaintiff called Shellpoint and spoke with an agent identified as Julia Y. *Id.*

**22.** Plaintiff alleges that Julia represented that foreclosure activity had already been placed on hold and that the scheduled foreclosure sale would not proceed. *Id.*

**23.** While still on the call, Plaintiff made a payment of $2,613.50 through the online portal, and Julia verbally confirmed receipt of the payment. *Id.*

**24.** Following the payment, Plaintiff observed that Shellpoint's online servicing portal reflected that the loan was in active loss mitigation status immediately after the payment was accepted. *Id.*

**25.** Plaintiff also emailed Foreclosure Counsel at 9:35 a.m. EST on January 22, 2026, advising that the servicer had stated the sale was on hold and asking about cancellation of the sale. *Id.*

**26.** Counsel responded that he had not heard from the servicer and that even if he had, it was too late and the sale would proceed. *Id.*

**27.** Approximately 25 minutes before the sale, Plaintiff called Shellpoint again but could not reach Julia, and the representative who answered was unable to confirm whether foreclosure counsel had been contacted or whether the foreclosure sale had been cancelled. *Id.*

**28.** The foreclosure sale nevertheless proceeded on January 22, 2026, and the Clerk issued the Certificate of Sale reflecting a high bid of $110,100.00 to Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing.

## C. Post-Sale Servicing Disputes and Notice of Error

29. Following the January 22, 2026 foreclosure sale, Plaintiff continued to dispute the servicing of the loan and filed post-sale objections in the state foreclosure action.

30. In late January 2026, Shellpoint was served with a Notice of Error concerning the servicing of Plaintiff's loan. The Notice of Error was transmitted on Plaintiff's behalf by a third party. Plaintiff has made reasonable efforts to obtain a copy of that Notice of Error. Upon information and belief, Shellpoint maintains a copy of the Notice of Error in its servicing records, with its initial acknowledgement dated February 5, 2026, and a follow-up dated February 20, 2026, requesting additional time to provide a thorough and accurate response. See Shellpoint's NOE responses attached as Exhibit D.

31. On July 21, 2026, Shellpoint was served with a supplemental and revised Notice of Error and Request for Information to supplement the original request that went unanswered and to address the omission. See Revised Notice of Error and Request for Information attached Exhibit E.

32. Shellpoint has failed to provide a substantive written response to either the January 2026 Notice of Error or the July 2026 Revised Notice of Error, stating the results of a reasonable investigation or the reasons it concluded no error occurred, as required by 12 C.F.R. Section 1024.35(e).

## D. Improper REO Marketing and Possession Proceedings

33. While Plaintiff's post-sale challenges remained pending and before issuance of the Certificate of Title, Plaintiff observed the Property being marketed as a real-estate-owned ("REO") asset through Auction.com and other marketing channels. The advertisements described the Property as "occupied," and the Property was offered through at least two online auction cycles that concluded without a sale. *See* Exhibit F.

34. Prior to the Certificate of Title being issued, Shellpoint engaged in these commercial marketing and liquidation practices despite having actual and continuous

6

knowledge that Plaintiff was actively litigating the foreclosure action, was actively filing objections and motions before the state court, and that no Certificate of Title had vested clear ownership in Shellpoint.

35. On April 9, 2026, the Clerk issued the Certificate of Title.

36. Possession Counsel later served Plaintiff a Notice to Vacate dated June 9, 2026, stating that title had issued on April 9, 2026, and demanding surrender of possession within ten days.

37. On June 15, 2026, after receiving Shellpoint's Notice to Vacate, Plaintiff contacted Possession Counsel by email, per the instructions within the notice, acknowledged receipt of the notice, advised that investor-level review was requested concerning unresolved servicing issues previously raised through a Notice of Error, informed counsel of previously scheduled travel, expressed a willingness to engage in good-faith discussions regarding potential resolution, and requested that future communications be made in writing.

38. Plaintiff continued communicating with Freddie Mac regarding investor review and informed Possession Counsel that she remained willing to discuss resolution while expressly reserving all legal rights.

39. On June 30, 2026, Possession Counsel filed its Verified Motion for Writ of Possession while Plaintiff's investor review request remained pending, without having responded to Plaintiff's June 15, 2026 communication, and while Plaintiff was traveling outside Florida.

40. On July 2, 2026, Plaintiff again reached out to Possession Counsel and expressed continued willingness to discuss resolution. *See* communications to Possession Counsel Exhibit G. Possession Counsel did not respond.

41. On July 2, 2026, Plaintiff submitted a complaint to the Consumer Financial Protection Bureau ("CFPB") concerning the January 22, 2026 servicing events, including the representations allegedly made regarding the foreclosure hold, the acceptance of Plaintiff's payment, and the subsequent foreclosure sale.

7

42. On July 17, 2026, Shellpoint requested an additional 60 days to respond to the CFPB complaint.

## IV. DAMAGES

43. As a direct and proximate result of the Defendants' alleged conduct, Plaintiff suffered actual damages, including, but not limited to:

a) The loss of use of the $2,613.50 payment that Shellpoint accepted after representing that the payment would be used in connection with stopping the scheduled foreclosure sale, but which Shellpoint thereafter treated as unapplied, rejected, held in suspense, or otherwise failed to handle as represented;

b) Approximately $15,000 expended on flooring, kitchen, and ceiling improvements to the Property;

c) Storage expenses of approximately $115 per month, incurred to protect Plaintiff's personal property from loss or removal following the foreclosure sale and threatened dispossession;

d) Reasonable expenses incurred in attempting to investigate, dispute, mitigate, and correct Defendants' alleged servicing errors, including postage, copying, records expenses, travel expenses, and other out-of-pocket costs; and

e) Other economic losses shown through discovery and proven at trial.

44. Plaintiff also suffered substantial emotional distress and mental anguish as a result of Defendants' alleged conduct, including anxiety, loss of sleep, fear of imminent displacement, and continuing uncertainty concerning the security of her home and personal belongings. This distress was intensified when Shellpoint allegedly accepted Plaintiff's payment and represented that the foreclosure was on hold, but nevertheless permitted the sale to proceed without timely informing Plaintiff that the sale had not been stopped.

45. Plaintiff's emotional distress continued and increased when possession proceedings were pursued while Plaintiff was traveling outside Florida, causing Plaintiff to reasonably fear that she could return to find herself excluded from the Property and her personal belongings removed, damaged, or lost.

8

**46.** Defendants' alleged conduct caused the foregoing injuries by: (a) inducing Plaintiff to make the requested payment in reliance upon representations that foreclosure activity had been placed on hold; (b) failing to coordinate the servicing and foreclosure processes; (c) permitting the foreclosure sale to proceed; (d) thereafter failing to provide a timely and adequate explanation or correction despite Plaintiff's repeated disputes; and (e) pursuing possession proceedings without responding to Plaintiff's good-faith communications.

**47.** The full nature and amount of Plaintiff's damages remain subject to discovery and will be established at trial.

## COUNT I

### RESPA Violation – Failure to Respond to Notice of Error

### (12 U.S.C. Section 2605(e); 12 C.F.R. Section 1024.35)

### (Against Shellpoint)

**48.** Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

**49.** In late January 2026, Shellpoint received a Notice of Error concerning the servicing of Plaintiff's mortgage loan. Shellpoint acknowledged receipt of that Notice of Error on or about February 5, 2026, and requested an extension on February 20, 2026.

**50.** The Notice of Error identified alleged servicing errors concerning, among other things, Shellpoint's representations regarding a foreclosure hold, the handling of Plaintiff's January 22, 2026 payment, and Shellpoint's servicing of the loan surrounding the foreclosure sale.

**51.** Under 12 C.F.R. Section 1024.35(e), a servicer must respond to a Notice of Error by providing a written response that states whether the servicer has corrected the error; and if the servicer concludes no error occurred, provides a written explanation of the servicer's findings and the reasons for its conclusions.

**52.** Shellpoint acknowledged receipt of the January 2026 Notice of Error but failed, within the time permitted by 12 C.F.R. Section 1024.35, to provide a

substantive written response stating the corrections made or the results of a reasonable investigation and the reasons it concluded that no error occurred.

53. Shellpoint also failed to respond to Plaintiff's July 21, 2026 Revised Notice of Error and Request for Information within the required timeframes.

54. The failure to respond to the Notices of Error caused Plaintiff to lose the opportunity to correct the servicing errors before the sale proceeded, resulting in the damages described in Paragraphs 43 through 47.

55. As a direct and proximate result of Shellpoint's alleged failure to comply with its obligations under 12 C.F.R. Section 1024.35, Plaintiff suffered actual damages, including those described in Paragraphs 43 through 47.

56. Plaintiff is entitled to recover all relief authorized by RESPA, including actual damages, costs, attorney's fees if later represented by counsel or otherwise authorized, additional damages under 12 U.S.C. Section 2605(f)(1)(B) if Plaintiff establishes a pattern or practice of noncompliance, and such further relief as the Court deems just and proper.

## COUNT II

### RESPA Violation – Failure to Respond to Request for Information

### (12 U.S.C. Section 2605(e); 12 C.F.R. Section 1024.36)

### (Against Shellpoint)

57. Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

58. On December 8, 2025, Plaintiff submitted a Qualified Written Request and Request for Information pursuant to RESPA and Regulation X, seeking servicing records concerning the loan.

59. Under 12 C.F.R. Section 1024.36, a servicer must respond to a Request for Information by providing the requested information; or conducting a reasonable search and providing a written response explaining why the information is unavailable; or providing a written response explaining why the request is not a valid request for information.

10

60. Shellpoint responded on December 18, 2025, but failed to provide the requested servicing information, including information concerning the original promissory note and document custodian.

61. Shellpoint's response was inadequate and failed to comply with the requirements of 12 C.F.R. Section 1024.36.

62. The failure to respond adequately to the Request for Information caused Plaintiff to be unable to fully understand and dispute the servicing of the loan, resulting in the damages described in Paragraphs 43 through 47.

63. Plaintiff is entitled to recover all relief authorized by RESPA, including actual damages, costs, attorney's fees if later represented by counsel or otherwise authorized, additional damages under 12 U.S.C. Section 2605(f)(1)(B) if Plaintiff establishes a pattern or practice of noncompliance, and such further relief as the Court deems just and proper.

## COUNT III

### Negligent Misrepresentation

### (Against Shellpoint)

64. Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

65. Shellpoint, through its servicing representative, represented to Plaintiff that a foreclosure hold had already been placed on the Plaintiff's loan and that a sale would not proceed if Plaintiff made a payment.

66. Plaintiff made a payment of $2,613.50 in reliance upon those representations.

67. Contrary to those representations, the foreclosure sale proceeded later that morning.

68. Shellpoint supplied this information during the servicing of Plaintiff's mortgage loan, and Plaintiff alleges Shellpoint failed to exercise reasonable care in obtaining or communicating the information.

11

69. Shellpoint knew or should have known that Plaintiff would rely on these representations in deciding whether to make the payment.

70. As a direct and proximate result of Plaintiff's reliance on Shellpoint's representations, Plaintiff suffered the damages described in Paragraphs 43 through 47.

## COUNT IV

## Violation of the Florida Deceptive and Unfair Trade Practices Act – FDUTPA

## (Fla. Stat. Sections 501.201–501.213)

## (Against Shellpoint)

71. Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

72. At all times material, Shellpoint was engaged in trade or commerce through the servicing of residential mortgage loans in Florida.

73. Plaintiff alleges that Shellpoint engaged in deceptive and/or unfair acts or practices by representing that a foreclosure hold had already been placed on Plaintiff's loan, that the scheduled foreclosure sale would not proceed, and that Plaintiff should immediately make the requested payment while Shellpoint would contact Foreclosure Counsel to stop the sale.

74. Plaintiff alleges that these representations were likely to mislead a reasonable consumer acting under the same or similar circumstances.

75. Plaintiff reasonably relied upon Shellpoint's representations by immediately making the requested payment of $2,613.50 while still on the telephone with Shellpoint.

76. Plaintiff suffered actual monetary damages, including those described in Paragraphs 43 through 47, in an amount to be proven at trial.

12

## COUNT V

### Florida Deceptive and Unfair Trade Practices Act – FDUTPA

### (Fla. Stat. Sections 501.201–501.213)

### (Against Shellpoint – REO Marketing)

77. Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

78. At all times material, Shellpoint was engaged in trade or commerce through the servicing of residential mortgage loans in Florida.

79. Shellpoint engaged in deceptive trade practices by actively marketing Plaintiff's primary residence to the public despite continuous knowledge that Plaintiff was actively litigating the foreclosure action and that no Certificate of Title had issued.

80. Shellpoint's public representations that the property was an REO asset available for immediate purchase before issuance of Certificate of Title were inherently deceptive, false, and material, and created a false impression of finality in the foreclosure proceedings.

81. Shellpoint's REO marketing was deceptive because the property was marketed while Plaintiff's objections to the sale remained pending; the Certificate of Title had not yet issued; Shellpoint knew Plaintiff was actively contesting the sale; the property was described as "occupied" while Shellpoint simultaneously sought possession.

82. Plaintiff suffered actual monetary damages, including those described in Paragraphs 43 through 47, in an amount to be proven at trial.

## COUNT VI

### Violation of the Florida Deceptive and Unfair Trade Practices Act – FDUTPA

### (Fla. Stat. Sections 501.201–501.213)

### (Against McCalla Raymer Leibert Pierce LLC)

83. Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

13

**84.** At all times material, McCalla Raymer Leibert Pierce LLC was engaged in trade or commerce through the representation of its client in foreclosure and debt collection activities in Florida.

**85.** McCalla Raymer Leibert Pierce LLC engaged in deceptive and/or unfair acts or practices by continuing to prosecute the January 22, 2026 foreclosure sale despite receiving actual notice from Plaintiff that Shellpoint had represented that a foreclosure hold was in place; receiving Plaintiff's request to postpone the sale due to her father's passing; receiving Plaintiff's email at 9:35 a.m. on January 22, 2026 advising that the servicer had stated the sale was on hold; receiving Plaintiff's payment of $2,613.50 made in reliance on Shellpoint's representations.

**86.** Plaintiff alleges that these acts were likely to mislead a reasonable consumer acting under the same or similar circumstances.

**87.** Plaintiff suffered actual monetary damages, including those described in Paragraphs 43 through 47, in an amount to be proven at trial.

**COUNT VII**

**Violation of the Florida Deceptive and Unfair Trade Practices Act – FDUTPA**

**(Fla. Stat. Sections 501.201–501.213)**

**(Against Aldridge Pite, LLP)**

**88.** Plaintiff realleges and incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

**89.** At all times material, Aldridge Pite, LLP was engaged in trade or commerce through the representation of its client in possession and debt collection activities in Florida.

**90.** Aldridge Pite, LLP engaged in deceptive and/or unfair acts or practices by pursuing possession proceedings against Plaintiff while Plaintiff's servicing disputes remained unresolved; a Notice of Error remained pending without response from Shellpoint; an investor-level review remained pending; a CFPB complaint filed by Plaintiff was under review; Plaintiff had expressly communicated her willingness to

14

engage in good-faith discussions regarding resolution; Plaintiff had requested that future communications be made in writing.

91. Aldridge Pite, LLP received Plaintiff's June 15, 2026 communication but did not respond, instead filing a Motion for Writ of Possession on June 30, 2026 while Plaintiff was traveling outside Florida.

92. Aldridge Pite, LLP received Plaintiff's July 2, 2026 communication but did not respond.

93. Plaintiff alleges that these acts were likely to mislead a reasonable consumer acting under the same or similar circumstances and constituted unfair trade practices.

94. Plaintiff suffered actual monetary damages, including those described in Paragraphs 43 through 47, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

A. Enter judgment in favor of Plaintiff on all counts as are proven;

B. An order preserving the status quo pending resolution of this action by temporarily staying eviction proceedings to allow this Court to resolve Plaintiff's claims;

C. A declaration that Shellpoint wrongfully accepted Plaintiff's January 22, 2026 payment after representing that foreclosure activity had been placed on hold, together with such restitution or other equitable relief as the Court deems appropriate;

D. Award statutory damages under 12 U.S.C. Section 2605(f)(1)(B) if Plaintiff establishes a pattern or practice of noncompliance by Shellpoint;

E. Actual damages in an amount to be determined at trial;

F. An award for attorneys' fees and costs if later represented or otherwise authorized by law; and

G. Any other such relief the Court may deem proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

Respectfully submitted this _31_ day of July, 2026,

Kerry Murray
Plaintiff, pro se
881 Franklin Cir
Palm Harbor, FL 34683
T: 651-235-0482
ksmurray@live.com

16